# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DALE BRAGG, THE STATE OF ILLINOIS *ex rel.* DALE BRAGG,<br><br>Plaintiff,<br><br>v.<br><br>SCR MEDICAL TRANSPORTATION, INC.,<br><br>Defendant. | Case No. 07-cv-2328<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Plaintiff-Relator Dale Bragg ("Plaintiff" or "Bragg") filed this *qui tam*[1] action against Defendant SCR Medical Transportation, Inc. ("Defendant" or "SCR") asserting violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the Illinois Whistleblower Reward and Protection Act ("IWRPA"), 740 ILCS § 175/1. SCR moved to dismiss Bragg's complaint for failure to plead with particularity pursuant to FED. R. CIV. P. 9(b), and for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6). For the reasons that follow, the Court grants Defendant's motion.

---

[1] A *qui tam* action is one in which a private citizen sues for himself and on behalf of the government to recover a penalty under a statute which provides that part of the penalty is awarded to the party bringing the suit and the remainder of the penalty is awarded to the government. *See U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 852 (7th Cir. 2009). The government remains the real party of interest in *qui tam* actions. *Id.*

## BACKGROUND

### 1. Actions Under the False Claims Act

The FCA authorizes private individuals called "*qui tam* plaintiffs" or "relators" to file and prosecute suits against any person or entity alleged to have knowingly presented a false claim to the federal government. *See* 31 U.S.C. § 3730(b). After the complaint is filed, the FCA requires that the federal government be given an opportunity to investigate the claim and decide whether to intervene in the action. When the government decides not to intervene, the complaint is unsealed and the suit proceeds at the direction of the relator on behalf of the government.

### 2. Facts

Bragg worked for SCR from March 2003 until his resignation in March 2007. (Compl. p. 4.) SCR provides non-emergency medical transportation or "paratransit services" for individuals who are unable to use conventional public transportation due to physical or health challenges. (*Id.* at p. 7.) SCR has a fleet of vehicles including wheelchair accessible minivans, 15-passenger vans, and wheelchair accessible coaches and sedans. (*Id.*) Prior to his resignation, Bragg was SCR's Operations Manager with responsibility for budget approval, invoice review and approval, and management authority over 241 employees. (*Id.* at p. 4.)

The Regional Transportation Authority ("RTA") provides funding, planning, and fiscal oversight for regional bus and rail operations in the six counties serving northeastern Illinois. (*Id.* at p. 5.) The RTA administers a regional certification program that determines whether individuals are eligible for paratransit services pursuant to the Americans with Disabilities Act ("ADA"). (*Id.*) The RTA provides financial review, oversight, and planning for Metra, the Chicago Transit Authority ("CTA"), and PACE, which is the suburban bus division of the RTA. (*Id.*) The RTA receives funds from the federal government and the State of Illinois to fund

paratransit services. (*Id.* at p. 6.) On July 1, 2006, PACE began operating all ADA paratransit services in the RTA service area. (*Id.*) Previously, the CTA operated paratransit services in the City of Chicago while PACE provided the same services in the suburban areas. (*Id.*) Both CTA and PACE contracted with SCR to provide ADA paratransit services. (*Id.*)

One month after his resignation from SCR, Bragg filed a sealed complaint on April 26, 2007 against SCR in accordance with the *qui tam* provision of the FCA. (*Id.* at p. 1.) Bragg alleges that SCR systematically presented fraudulently manipulated and modified trip tickets to CTA, PACE, and the RTA to make it appear that SCR was on time, or not as late, in performing the paratransit services. (*Id*. at p. 2.) Bragg claims that SCR falsely created a better on-time performance record and wrongfully sought payments from the RTA, CTA, and PACE at a higher rate than SCR was entitled. (*Id.*) Bragg alleges that SCR's agreements with CTA and PACE set forth on-time requirements and provided for reduced payment to SCR when those requirements were not met. (*Id.* at ¶¶ 38-39.) The fraudulent scheme allegedly involved the falsification of up to 2,300 trip tickets per day by multiple SCR employees over the entire three year period that Bragg worked for SCR. (*Id.* at ¶¶ 41, 46.)

In his complaint, Bragg alleges SCR: (1) knowingly presented or caused to be presented false or fraudulent claims for payment to the federal government and the State of Illinois; (2) knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved; and (3) conspired to defraud the federal government and the State of Illinois. (*Id.* at pp. 18-19.) Bragg also asserts claims under the whistleblower protection provisions of the FCA and the IWRPA alleging SCR threatened, harassed, and discriminated against Bragg because of the lawful acts done by Bragg in furtherance of this *qui tam* action. (*Id.* at 21.)

Both the United States and the State of Illinois declined to intervene in this action and the complaint was unsealed by the Court on November 1, 2010. (Dkt. No. 24.) The State of Illinois or the federal government may join the action at a later date, however, upon a showing of "good cause." *See* 31 U.S.C. § 3730(c)(3). SCR timely filed its motion to dismiss on December 30, 2010 arguing that Bragg failed to meet the particularity requirement under Rule 9(b) and failed to adequately state his fraud and whistleblower claims under the FCA. (Dkt. No. 32.) SCR also moved for the dismissal of the state law claims arguing that the Court should relinquish jurisdiction over these claims because Bragg's federal claims fail. Although neither the United States nor the State of Illinois has taken a position on whether Bragg has properly plead his claim under Rule 9(b) or 12(b)(6), both have provided their written consent to a dismissal of the action so long as such dismissal is without prejudice to their rights as the real parties in interest. (Dkt. No. 59.)

## STANDARD OF REVIEW

1. **Rule 9(b) Pleading Requirement**

The heightened pleading standard set forth in Rule 9(b) requires that in all allegations of fraud, "a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). This means a party must plead "the who, what, when where, and how: the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). When a fraud scheme involves numerous transactions over time, a plaintiff need not plead specifics with respect to every instance of the fraud but must plead at least representative examples of the fraud. *U.S. ex. rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 & 379 (7th Cir. 2003). The particularity requirement of Rule 9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree*

*Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). The heightened pleading requirement in the fraud context forces the plaintiff to conduct a careful pretrial investigation and minimizes the risk of extortion that may come from a baseless fraud claim. *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 748-49 (7th Cir. 2005). Further, particularity is required, in part, because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such allegations are not lightly leveled. *Pirelli*, 631 F.3d at 442.

### 2. Rule 12(b)(6)

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Christensen v. County* of Boone, 483 F.3d 454, 458 (7th Cir. 2007). When evaluating the sufficiency of a complaint, a district court must construe the complaint in the light most favorable to the nonmoving party. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *Wilson v. Price*, 624 F.3d 389, 391-92 (7th Cir. 2009). If they do not, the plaintiff pleads itself out of court. *Id.* at 392. For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As such, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## DISCUSSION

### 1. FCA Fraud Claims

Bragg asserts three fraud claims under the FCA as follows: (1) that SCR violated 31 U.S.C. § 3729(a)(1) by presenting false or fraudulent claims for payment or approval by the federal government (count I); (2) that SCR violated 31 U.S.C. § 3729(a)(2) by making or using false records or statements to get false or fraudulent claims paid by the federal government (count II); and (3) that SCR violated 31 U.S.C. § 3729(a)(3) by conspiring to defraud the United States by getting false or fraudulent claims allowed or paid by the federal government (count III). Bragg identified SCR's President, Vice-President, drivers, call center agents, call center supervisors, and general manager as the SCR employees *who* were involved in modifying the trip tickets to show better on-time performance. (Compl. ¶ 46.) The complaint alleges the modification and submission of falsified trip tickets is *what* SCR did to violate the FCA. (*Id.* at ¶ 55.) Further, Bragg alleges SCR routinely modified and submitted false or fraudulent trip tickets during the entire time *when* he worked at SCR (*id.* at ¶ 41.) and identified the locations *where* the modifications took place as the SCR office and by drivers in the field (*id.* at ¶¶ 40, 54). The complaint sets forth *how* SCR implemented, monitored, and reviewed the modification process throughout the day and into the night hours. (*Id.* at ¶¶ 47-53.) Bragg claims these allegations are sufficient to satisfy the "who, what, when, where, and how" particularity requirement under Rule 9(b). The Court disagrees.

Construing these allegations in the light most favorable to Bragg, they reveal only a general scheme by SCR to modify trip tickets to achieve better on-time performance and increased and unearned payment from PACE and CTA. Bragg does not set forth the "who, what, when, where, and how" circumstances of any particular modified trip ticket or cite one example

of the submission of a falsified trip ticket to PACE or the CTA. While Bragg is not required at this stage of the proceedings to provide details to support the entire allegedly fraudulent scheme, Bragg is required to plead specific and concrete examples of false records and false claims. *See, e.g., U.S. ex rel. Gross v. AIDS Research Alliance-Chicago,* 415 F.3d 601, 605 (7th Cir. 2005) (affirming dismissal where relator set forth only generalized allegations of fraud); *Lusby*, 570 F.3d at 854 (reversing dismissal where complaint named specific parts shipped on specific dates and related the details of payment); *Garst*, 328 F.3d at 376 (affirming dismissal where relator failed to allege "any specific example of a fraudulent claim").

Bragg claims the particularity requirement should be relaxed where a plaintiff lacks access to all facts necessary to detail his claim and can obtain these details through discovery. (Pl.'s Opp'n p. 13.) Only one of the cases that Bragg relies upon to support his position involves a claim asserted under the False Claims Act. In *U.S. ex rel. Kennedy v. Aventis Pharm.*, 512 F. Supp. 2d 1158, 1167 (N.D. Ill. 2007), the district court denied a motion to dismiss for failure to meet the particularity requirement of Rule 9(b). The court in *Kennedy* concluded that the rule should be relaxed because specific facts relating to the alleged fraud were not "within the relators' reach." *Id.* Courts in this district that have relaxed Rule 9(b)'s pleading standard typically do so when the plaintiff is alleging a wider fraudulent scheme in which he or she had no role. *U.S. ex rel. Walner v. Northshore Univ. Healthsystem*, 660 F. Supp. 2d 891, 898 n. 5 (N.D. Ill. 2009). This is not the situation in which Bragg finds himself. Unlike the relators in *Kennedy*, Bragg not only had daily access to the modified trip tickets but also monitored the rate and progress of the ticket modifications throughout the day and into the night. (Compl. ¶ 53.) The Court refuses to relax the requirements of Rule 9(b) here because specific information was available to Bragg to properly plead his fraud claims under the FCA. Further, relaxing Rule 9(b)

and allowing discovery to proceed would defeat the objective behind the Rule that requires plaintiffs to conduct a careful pretrial investigation. The Court finds Bragg failed to plead his fraud claims under the FCA with particularity as required by Rule 9(b) and hereby dismisses these claims without prejudice.

### 2. FCA Whistleblower Claim

In count VII, Bragg alleges SCR constructively discharged him after he objected to the policy and practice of falsifying trip tickets in violation of the whistleblower protection provision of the FCA. (Compl. ¶¶ 56, 84-86.) An "employee who is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against" by his or her employer because of lawful acts done by the employee in furtherance of a *qui tam* action is entitled to seek relief pursuant to 31 U.S.C. § 3730(h). Such relief may include reinstatement, two times the amount of back pay, interest on the back pay, compensation for any special damages, as well litigation costs and reasonable attorneys' fees. 31 U.S.C. § 3730(h).

To state a claim for retaliatory discharge, a plaintiff must allege three elements: (1) plaintiff's actions were done to promote a FCA claim and were therefore protected by the statute; (2) the plaintiff's employer was aware that plaintiff was engaged in protected activity; and (3) the plaintiff's discharge was motivated, at least in part, by the protective activity. *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir. 2004). Bragg has not adequately alleged that he engaged in protected activity. Bragg alleges only that he stated an "objection" and an "unwillingness" to participate in the policy of falsifying trip tickets in February 2007 after having monitored the progress of the modification progress for nearly three years. (Compl. ¶¶ 15, 53, 59.) A refusal to comply with fraudulent conduct does not, without more, constitute protected activity. The express language of the FCA defines protected activity to include the

"investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730 (h). Bragg has not alleged that he investigated the ticket modification process or took any other steps toward bringing an action under the FCA or IWRPA. Thus, Bragg has failed to plead facts to plausibly suggest he was engaged in protected activity under the FCA.

Bragg also fails to allege sufficient facts to demonstrate that SCR was aware that Bragg was engaged in protected activity. To meet the notice requirement, a plaintiff must at least inform the employer that he or she is investigating illegal activity. *Id.* at 484. There are no such allegations here. Bragg's "unwillingness" to participate in the trip ticket modification practice did not put SCR on notice of a *qui tam* action. Moreover, Bragg's failure to demonstrate he was engaged in protected activity defeats his ability to satisfy the third element of his whistleblower claim.

Bragg has failed to plead sufficient facts in support of his claim that he was constructively discharged in violation of the whistleblower provision of the FCA. The Court hereby dismisses count VII without prejudice.

### 3. State Law Claims

In counts IV, V, VI, VIII, and IX, Bragg asserts various violations of the IWRPA. A district court has the discretion to relinquish jurisdiction over state law claims that remain after the dismissal of federal claims. *Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008). The Court exercises that discretion here and dismisses without prejudice, Bragg's claims under the IWRPA.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendant SCR Medical Transportation, Inc.'s motion to dismiss. The dismissal is without prejudice as to the rights of Bragg, the United States, and the State of Illinois.

IT IS SO ORDERED.

Dated:
April 8, 2011

Honorable Sharon Johnson Coleman
United States District Court